IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:17cv___ |
| | ) | |
| U.S. Currency in the amount of $13,845.15 | ) | |
| and All Funds in Bank Accounts in | ) | |
| Attachment A | ) | |

## AFFIDAVIT IN SUPPORT OF CIVIL FORFEITURE COMPLAINT

I, Matthew Frohlich, Special Agent of the Diplomatic Security Service, United States Department of State (hereinafter referred to as the "DSS"), being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1.      I make this affidavit in support of a civil forfeiture complaint for the following assets seized pursuant to seizure warrants issued by the United States District Court for the Eastern District of Virginia in case numbers 1:12SW725, 1:12SW726, 1:12SW727, 1:12SW728, 1:12SW729, 1:12SW835, 1:12SW941, 1:12SW961, 1:13SW08, 1:13SW09, 1:13SW189, 1:13SW250, 1:13SW251, 1:13SW302, 1:13SW301, 1:13SW426, 1:13SW583, 1:14SW217:

1. Bank of America Account Number 435028615398;
2. Bank of America Account Number 435028590882;
3. Bank of America Account Number 435030082977;
4. TD Bank Account Number 4272100987;
5. TD Bank Account Number 4266127856;
6. Citibank Account Number 4971811760;
7. Bank of America Account Number 435030243017;
8. Bank of America Account Number 435030583405;
9. Wells Fargo Account Number 1841222076;
10. Bank of America Account Number 435030762349;
11. Wells Fargo Account Numbers 6176173000 and 6176180930;

12. Citibank Account Number 6786694543;
13. Wells Fargo Account Number 7786872544;
14. Bank of America Account Number 435031142939;
15. Wells Fargo Account Numbers 3715449900 and 2715103160;
16. BB&T Account Number 0000250526970;
17. Wells Fargo Account Number 2142215017;
18. U.S. Currency in the amount of 13,845.15; and
19. Wells Fargo Account Number 3051656787.

2.     I am a special agent of the DSS, duly empowered pursuant to Title 22, United

States Code § 2709, and acting according to such. I have served in this capacity for

approximately 15 years. I am currently assigned to the New York Field Office of the DSS and

have been since May of 2016. Prior to this assignment, I was detailed to the Metropolitan Area

Fraud Task Force, an interagency law enforcement group charted by the United States Secret

Service, organized to combat financial and identity crimes. Previous to this assignment I was

detailed to the NY/NJ High Intensity Drug Trafficking Area (HIDTA) Task Force in Manhattan.

I have conducted numerous investigations into various types of federal criminal violations,

including travel document fraud, firearms offenses, immigration offenses, financial frauds,

controlled substance offenses, and fugitive investigations.

3.     I am an "investigative or law enforcement officer of the United States" within the

meaning of Title 18 United States Code § 2510(7); that is, an officer of the United States who is

empowered by law to conduct investigations of, and make arrests for offenses enumerated in

Title 18, United States Code § 2516.

## PURPOSE OF AFFIDAVIT

4.     On or about July 20, 2012, United States Magistrate Judge Ivan Davis signed an

arrest warrant charging an individual with one count of violating Title 18, United States Code §

1543 (forgery or false use of passport). *See:* Case No. 1:12-MJ-459. The individual in question

had used a forged Czech Republic passport in a fictitious identity to open a bank account at

BB&T Bank in Annandale, Virginia. This individual shall be referred to as "Cooperating Source

1", or "CS-1" throughout this affidavit.

5.      On or about August 9th, 2012, United States Magistrate Judge John F. Anderson

signed a search warrant authorizing the search of a residential property in Fairfax County,

Virginia where CS-1 was living.

6.      On or about August 10, 2012, DSS agents, other task force officers and I executed

this arrest warrant, along with the federal search warrant at an address in Fairfax County,

Virginia. Law enforcement officers located CS-1 and placed him under arrest. A search of the

residence in question was executed and the forged Czech passport, along with additional forged

passports and forged counterfeit foreign driver's licenses were found during the search.

7.      CS-1 was administered his Miranda rights and agreed to waive them and speak

with me and the other task force officers at the scene. CS-1 stated in sum and substance, the

following things:

a.      CS-1 was recruited online to be involved in a financial fraud scheme with

confederates in the United States, as well as several countries in Eastern Europe.

b.      CS-1's role in the scheme was to receive forged foreign passports and forged

foreign driver's licenses sent from Eastern Europe to Virginia via a commercial courier service.

Both documents (passport and driver's license) would feature a true photo of CS-1, but the name

and date of birth would be totally fictitious. This was referred to as an "ID package". Upon

receipt, CS-1 was further responsible for using the ID package to open domestic US bank

accounts in the fictitious name. CS-1 was instructed to set up four (4) accounts per ID package.

Upon opening the accounts, CS-1 was then to set up online banking access for each of the accounts. Finally, upon setting up the online banking access, CS-1 would e-mail via "virtual dead drop" [1] the login credentials for the four bank accounts.

    c.     CS-1's overseas confederates would then list non-existent vehicles for sale on various sites online, such as eBay Motors or similar. An unwitting victim would "purchase" the phantom vehicle, and wire the money into one of the accounts opened by CS-1. No vehicle would ever be provided to the unwitting buyer.

    d.     CS-1's overseas confederates would alert CS-1 once money had been wired into the account. Upon such notification, CS-1 would physically visit a branch of the bank and withdraw the funds in cash; CS-1 was instructed to never withdraw more than $10,000 USD so as to avoid currency reporting requirements under the Bank Secrecy Act.

    e.     CS-1 would then utilize various money transmitter services such as Western Union or Moneygram to send the funds overseas to additional overseas confederates in Eastern Europe. CS-1 was instructed to never send more than $2900.00 USD in a single transaction, for amounts in excess of $3000.00 USD triggers an IRS 1099 form to be issued.

    8.     CS-1 was taken to the United States District Court for the Eastern District of Virginia and had his initial appearance before Magistrate Judge Davis.

    9.     After his initial appearance, CS-1 sat for a proffer session at the United States Attorney's Office for the Eastern District of Virginia. CS-1 agreed to cooperate with the

---

[1] A "virtual dead drop" is a method of sending data between confederates that decreases the likelihood of detection by law enforcement. The technique involves two parties having common access to a web based email account (i.e. gmail, yahoo, etc). When a message needs to be sent, one party composes a "draft" message with the desired text. That party then "logs out", and the second party logs into the account and reviews the draft; collects the information, and then deletes the draft. Thus, no e-mail is ever actually sent.

Government's investigation and became a duly registered confidential informant of the Department of State.

10.     At the direction of the DSS and the US Attorney's Office, CS-1 continued to receive forged foreign passports and driver's licenses from the overseas confederates. He continued to use these documents to open bank accounts, and comport himself/herself as a member of the conspiracy.

11.     At various times, CS-1 would be notified that funds had been wired into an account that CS-1 had opened.

12.     With the cooperation of numerous financial institutions' corporate security personnel, the affected bank(s) would freeze the account so that no money could in fact be withdrawn.

13.     After a financial institution had frozen a particular bank account, I or another task force officer would prepare a seizure warrant to seize all funds placed into these bank accounts.

14.     CS-1 was sent ID packages, and opened accounts in the following fictitious identities:

    a.      Klement, Dominik

    b.      Teodor, Maximillian

    c.      Karoly, Emanuel

    d.      Helmuth, Rafael

    e.      Tobias, Martin

    f.      Julius, Christopher

    g.      Papp, Gyorgy

h.      Andreas, Theodor

i.      Dominik, Leonhard

j.      Csaba, Vadasz

15.      Addionally, CS-1's reporting identified additional individuals in the United States who were also co-conspirators in this scheme, including the following individuals:

a.      Blaj, Gabriel

b.      Finica, Ghenadie

c.      Fianis, Toader

16.      All told, throughout the course of this investigation, the DSS seized the following assets, pursuant to seizure warrants, based on the reporting of CS-1:

| DS Case No. | Asset ID | Description of Asset | Value per CA | Judgment Value | Judgment Balance | Category |
|---|---|---|---|---|---|---|
| PF-2012-51279 | 12-DSS-000031 | Bank account | $5,228.00 | | | Seized/Restrained |
| PF-2012-51279 | 12-DSS-000032 | Bank account | $24.00 | | | Seized/Restrained |
| PF-2012-51279 | 12-DSS-000033 | Bank account | $60.00 | | | Seized/Restrained |
| PF-2012-51279 | 12-DSS-000034 | Bank Account | $60.00 | | | Seized/Restrained |
| PF-2012-51279 | 12-DSS-000035 | Bank Account | $14,437.01 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000004 | Bank Account | $9,459.04 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000005 | Bank Account | $2,507.50 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000006 | Bank Account | $24,161.31 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000007 | Bank Account | $32,970.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000008 | Bank Account | $13,486.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000009 | Bank Account | $3,625.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000014 | Bank Account | $13,330.01 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000015 | Bank Account | $678.75 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000016 | Bank Account | $27,585.34 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000023 | Bank Account | $18,717.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000024 | Bank Account | $29,570.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000025 | Bank Account | $5,500.00 | | | Seized/Restrained |
| PF-2012-51279 | 13-DSS-000031 | U.S. Currency | $13,845.15 | | | Seized/Restrained |
| PF-2012-51279 | 14-DSS-000007 | Financial Instrument | $18,224.96 | | | Seized/Restrained |

## CONCLUSION

17.      The inventory of seized assets enumerated above were lawfully seized and restrained pursuant to numerous seizure warrants signed by various United States Magistrate Judges in the Eastern District of Virginia after said Magistrate Judges found that probable cause

existed to believe they were the proceeds of criminal activity in violation of numerous sections

of Title 18 of the United States Code.

The foregoing is true and correct to the best of my knowledge and belief.

Matthew Frohlich
Special Agent
Diplomatic Security Service

Signed and sworn to me this _5th_ day of _December_, 2017

Signature of Notary Public

Seal of Notary Public

KAREN SHANER
Commission # 2382112
Notary Public, State of New Jersey
My Commission Expires
February 03, 2019